**KAPLAN FOX & KILSHEIMER LLP**
Justin B. Farar (SBN 211556)
12400 Wilshire Boulevard, Suite 460
Los Angeles, CA 90025
Telephone: 310-614-7260
Facsimile: 310-614-7260
Email: *jfarar@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)
Clarissa R. Olivares (SBN 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email: *lking@kaplanfox.com*
       *mgeorge@kaplanfox.com*
       *breed@kaplanfox.com*
       *colivares@kaplanfox.com*

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA CROSS, individually and on behalf of all others similarly situated, | Case No. 2:24-cv-09325 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| HALEON US INC., | |
| Defendant. | |

Plaintiff Joshua Cross ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, brings this class action against Defendant Haleon US Inc. ("Haleon" or "Defendant") and complains and alleges upon personal knowledge as to himself and upon information and belief as to all other matters.

## **NATURE OF THE ACTION**

1.      Haleon manufactures, markets, and sells the Parodontax line of dental care products, including four variants of Parodontax's "ACTIVE GUM REPAIR" products (Active Gum Repair Toothpaste: Breath Freshener; Active Gum Repair Toothpaste: Fresh Mint; Active Gum Repair Toothpaste: Whitening; and Active Gum Repair Mouthwash: Clear Mint) (collectively, "Parodontax").

2.      Haleon prominently markets and advertises Parodontax, claiming it can "Repair" gums. Reasonable consumers understand this to mean that Parodontax is capable of repairing lost or damaged gums. For example, Haleon claims that "[P]arodontax is Clinically Proven to Help Improve Gum Health[.]"[1]

3.      As described herein, the gum repair claims prominently displayed on the packaging of Parodontax are misleading. No toothpaste or mouthwash with a sole active ingredient of sodium fluoride—including Parodontax—can scientifically "repair" damaged gums.

4.      Haleon knows that consumers will pay a higher price for Products that are purportedly capable of bringing back lost gums because gum loss necessitates costly, often painful dental procedures, such as scaling and root planing, root canals, and even tooth loss or extractions. But the gum "repair" language used to advertise Parodontax is a misleading gimmick. The Products have the same active ingredient as many other anticavity toothpastes. Despite that fact, Haleon advertises Parodontax as being specially formulated to "Repair" gums, distinguishing Parodontax from

---

[1] https://www.parodontax.com/, *last accessed* April 3, 2024.

1  other fluoride toothpastes that merely claim they prevent cavities and decay. In truth,

2  Parodontax offers no unique gum strengthening—and certainly not restorative—

3  properties.

4      5.    Haleon's misrepresentations and mislabeling caused Plaintiff and

5  members of the proposed class to pay a price premium for Parodontax because they

6  believed that they were purchasing a specialty product that would bring back, restore,

7  repair, or heal lost or damaged gums. Had Plaintiff known the truth about Parodontax,

8  he would not have purchased it or, at a minimum, he would have paid less for it.

9      6.    In addition to damages, restitution, and statutory penalties, Plaintiff

10  seeks, on behalf of himself and the general public, an injunction precluding the sale

11  of Parodontax within a reasonable time after entry of judgment, unless Parodontax's

12  packaging and marketing are modified to remove any language suggesting that

13  Parodontax brings back, restores, repairs, or heals lost or damaged gums.

14                              **PARTIES**

15      7.    **Plaintiff Joshua Cross** is a citizen of California.

16      8.    **Defendant Haleon US Inc.,** (f/k/a GSK Consumer Health, Inc.)

17  ("Defendant or "Haleon") is a corporation existing under the laws of Delaware,

18  having its principal place of business in New Jersey, and registered to do business in

19  New York.

20      9.    Defendant manufactures, labels, markets, and distributes, the

21  Parodontax brand of oral care products throughout the United States, including in

22  this District, through numerous stores and online retailers.

23      10.   At all relevant times, Defendant has marketed Parodontax in a consistent

24  and uniform manner. Defendant sells Parodontax in all 50 states on its website and

25  through various distributors and retailers across the United States, including, but not

26  limited to, Amazon, Walmart, Walgreens, Safeway, and CVS.

27

28

1

## **JURISDICTION AND VENUE**

2  11.  This Court has jurisdiction over the subject matter of this action

3  pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005,

4  because the matter in controversy exceeds $5,000,000, exclusive of interest and costs,

5  and is a class action in which some members of the Class are citizens of different

6  states than the Defendant. *See* 28 U.S.C. § 1332(d)(2)(A). This Court has

7  supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8  This Court has personal jurisdiction over Defendant because it is authorized to do

9  business and conducts business in California, has specifically marketed and sold its

10  products services in California, and has sufficient minimum contacts with this state

11  and/or sufficiently avails itself of the markets of this state to render the exercise of

12  jurisdiction by this Court permissible.

13  12.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391 because a

14  substantial part of the events giving rise to the claims asserted herein occurred in this

15  District and Defendant is subject to personal jurisdiction to the federal court in this

16  District. Moreover, Defendant inhabits and/or may be found in this judicial district

17  and the interstate trade and commerce described herein is and has been carried out in

18  part within this judicial district.

19

## **FACTUAL ALLEGATIONS**

20

## I.  GINGIVITIS AND PERIODONTAL DISEASE

21  13.  Gingivitis is characterized as "irritation and swelling of the gum tissue

22  around the base of your teeth," and it is a common and mild form of gum disease.[2]

23

24

---

25  [2] Mayo Clinic, "Periodontitis," *available at*: https://www.mayoclinic.org/diseases-conditions/periodontitis/symptoms-causes/syc-20354473; *see also* Cleveland

26  Clinic, "Periodontitis," *available at*:

27  https://my.clevelandclinic.org/health/diseases/16620-periodontitis; *last accessed* October 29, 2024.

28

Gingivitis may cause bleeding while brushing, but typically causes "little or no discomfort."[3]

14.    Gingivitis can be avoided or even resolved by a dentist or good at-home dental care, "but only if treated early before you have bone loss."[4]

15.    Left untreated, gingivitis can lead to a much more serious gum disease called periodontitis.[5]

16.    In its early stages, periodontitis causes bone loss as the gums pull away from the teeth.[6] As a result, patients develop periodontal pockets, where plaque and bacteria become trapped and difficult to remove.[7]

17.    If not removed, that plaque hardens under the gumline into tartar.[8] "You can't get rid of [tartar] by brushing and flossing — you need a professional dental cleaning to remove it."[9] The Journal of the American Dental Association has confirmed, once gingivitis progresses to periodontitis, "[the] plaque cannot be removed by personal hygiene (brushing and flossing)."[10]

18.    Indeed, the American Dental Association and the American Academy of Periodontology provide that "scaling and root planing without adjuncts is the treatment of choice for patients who have periodontitis. The guidelines go on to endorse use of systemic sub-antimicrobial dose doxycycline along with scaling and

---

[3] American Academy of Periodontology, "Gum Disease Information," *available at*: https://www.perio.org/for-patients/gum-disease-information/, *last accessed* October 29, 2024.

[4] Mayo Clinic, "Periodontitis"; *see also* Cleveland Clinic, "Periodontitis."

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] Mayo Clinic, "Periodontitis."

[9] *Id.*

[10] Journal of the American Dental Assoc., "Keeping your gums healthy," *available at* https://jada.ada.org/article/S0002-8177(15)00245-7/fulltext, *last accessed* April 3, 2024.

root planing for patients with moderate-to-severe periodontitis. Specifically, the guidelines recommend oral doxycycline (20 mg twice a day) for 3 to 9 months following scaling and root planing for these patients."[11]

19.    Eventually, untreated periodontitis may cause teeth to become loose and potentially fall out.[12] Moreover, people with periodontitis have a higher risk of developing heart disease, stroke, dementia and other serious health issues.[13]

20.    In sum: gingivitis causes inflammation, swelling, and potentially bleeding, but little discomfort. Periodontitis causes bone loss and the resultant periodontal pockets, tartar build-up, and other more severe symptoms of gum disease. Gingivitis can be treated with good at-home dental care. Periodontitis cannot.

## II.    DEFENDANT'S MISLEADING STATEMENTS

21.    The Parodontax "ACTIVE GUM REPAIR" products are characterized by a large, capitalized banner on each box reading: "ACTIVE GUM REPAIR." Even the brand name itself—"Parodontax"—sounds medical, further confusing consumers.



22.    Paradontax is sold for retail prices of up to $8.49 ($2.50/ounce).[14]

---

[11] American Dental Assoc., "Periodontitis," *available at*: https://www.ada.org/resources/ada-library/oral-health-topics/periodontitis, *last accessed* October 29, 2024.

[12] Mayo Clinic, "Periodontitis;" *see also* Cleveland Clinic, "Periodontitis."

[13] *Id*.

[14] *See*, *e.g.*, https://www.walgreens.com/

23.     But while toothpaste ingredients and regular brushing can prevent gingivitis, they cannot repair gums.[15] Receding gums do not grow back; once the gum tissue has pulled back and away from the teeth, it is "gone for good."[16] When gums recede, the roots of the teeth become exposed, making the teeth look longer, which changes the way the smile looks.[17] At every stage of periodontal disease, professional treatment is needed to repair gums.[18]

24.     Indeed, Haleon acknowledges this. Buried deep on its Parodontax website, Defendant concedes that "if your gums have already receded, it is not possible for them to grow back. When gum disease has progressed to this stage, a toothpaste alone will not stop or reverse the condition."[19] This information is not offered to the casual consumer browsing convenience store isles or online offerings.

25.     The representation of "ACTIVE GUM REPAIR" is therefore false, deceptive, and misleading because Parodontax can only help "prevent bleeding gums" and "reverse the effects of gingivitis"[20]—the earliest and mildest form of gum disease. It cannot "repair" gums.

---

[15] *See* Mayo Clinic, "Periodontitis;" *see also* Cleveland Clinic, "Periodontitis."

[16] *See, e.g.,* Handsman & Haddad: Periodontics, P.C., "Can Your Gums Grow Back After Scaling and Root Planing," *available at* https://www.worcesterdentalimplants.com/, *last accessed* October 29, 2024; *see also, e.g.*, Sacramento Dentist, "Gum Diseases & Your overall Health" (same), *available at* https://www.midtowndentalsacramento.com/news-blog/gum-diseases-your-overall-health/, *last accessed* October 29, 2024.

[17] *See, e.g.*, Premier Dental Care, "Gum Recession," *available at* https://www.smilebr.com/gum-recession, *last accessed* October 29, 2024.

[18] *See* Mayo Clinic, "Periodontitis;" *see also* Cleveland Clinic, "Periodontitis."

[19] Parodontax, "How to Help Stop Gum Recession," *available at* https://www.parodontax.com/gum-health/all-about-gums/how-to-help-stop-gum-recession, *last accessed* October 29, 2024.

[20] Parodontax, "Why Buy a Specialty Toothpaste?." *available at*: https://www.parodontax.com/gum-health/the-parodontax-difference/, *last accessed* October 29, 2024.

26.    Moreover, Parodontax's active ingredient–Stannous Fluoride .454% (.14% W/V Fluoride Ion)–which is common to most toothpastes, provides no unique gum "repair" benefits nor is authorized to claim it can reverse gingivitis. Instead, Stannous Fluoride is indicated for use only to "to relieve dental hypersensitivity, increase enamel production, *prevent* gingivitis and cavities, and control periodontal infections"—not to repair gingivitis that is *already* occurring.[21]

27.    Per the label submitted to the FDA by Haleon itself, stannous fluoride only "helps interfere with harmful effects of plaque associated with gingivitis."[22]

28.    When the Federal Food and Drug administration ("FDA") issued the proposed monograph for labeling of antigingivitis/antiplaque drug products, it did not refer to or address any indications for gum repair or about "revers[ing]" gingivitis.[23]  Haleon's claims therefore violate the FDA's misbranding provision and states that a drug is misbranded if "its labeling is false or misleading in any particular." 21 U.S.C. § 352.

29.    Indeed, the FDCA has issued a monograph that specifies the kinds of claims that can be made on fluoride toothpastes that are sold over-the-counter ("OTC"). Specifically, a marketer of a fluoride toothpaste may only claim that the product "[a]ids in the *prevention* of dental . . . 'cavities' [or] 'decay' . . . [or] '[o]ther truthful and nonmisleading statements" that the product aids in the *prevention* of dental decay. Anticaries Drug Products for Over-the-Counter Human Use, Final Monograph, 60 FR 52474-01, Subpart C - Labeling(c) (emphasis added).

---

[21] *See* Nat'l Library of Medicine, Compound Study: Stannous Fluoride at 7.1 (emphasis provided), *available at*: https://pubchem.ncbi.nlm.nih.gov/compound/Stannous-Fluoride, *last accessed* October 29, 2024.

[22] https://ndclist.com/ndc/0135-5022/label

[23] 68 FR 32232, *available at:* https://www.govinfo.gov/app/details/FR-2003-05-29/03-12783, *last accessed* October 29, 2024.

Specifically, the proposed monograph states the indications of an antigingivitis product as helping to:

- "control," "reduce," or "prevent" gingivitis or bleeding gums[24];
- "interfere with harmful effects of plaque associated with gingivitis" (if the product contains stannous fluoride)[25]; or
- "control" "reduce" "prevent" or "remove" plaque that leads to gingivitis (for antigingivitis/antiplaque products)[26].

30.    The FDA cautioned sellers of oral care products against representations not specifically discussed in the proposed monograph, since such statements could—and in this instance, do—mislead consumers.

31.    Haleon's representations that Parodontax is capable of "Repair[ing]" gums are prohibited because they are not claims regarding Parodontax's ability to prevent further cavities and decay. Rather, Haleon's representations falsely and unlawfully convey to consumers that Parodontax can *reverse* or *bring back* gum loss or damage.

32.    While the Parodontax "ACTIVE GUM REPAIR" products also state, in much smaller font, that it is an "Anticavity and Antigingivitis Toothpaste" and "Helps Reverse Signs of Early Gum Disease," the most prominent statement is "ACTIVE GUM REPAIR" in all capital letters over red background to draw the consumer's eye on the shelf.

33.    By contrast, Haleon additionally sells Parodontax-branded toothpastes in its "COMPLETE PROTECTION" line. The packaging on the "COMPLETE PROECTION" line of toothpaste states prominently that it "Helps Prevent Bleeding Gums" and, *inter alia*, "reduces bleeding gums," "reduces inflamed gums," and

---

[24] *Id.*

[25] *Id.*

[26] *Id.*

CLASS ACTION COMPLAINT

"removes plaque." These claims, unlike the "ACTIVE GUM REPAIR" claims, are scientifically possible.



34.    The active ingredient of the "COMPLETE PROECTION" line of toothpaste—Stannous Fluoride .454% (.14% W/V Fluoride Ion)—is identical to the active ingredient in the "ACTIVE GUM REPAIR" line of Parodontax products.[27]

35.    Based on the "COMPLETE PROECTION" line and Haleon's labeling and advertising of the same, Haleon intended to advertise the "ACTIVE GUM REPAIR" line of Parodontax products as providing gum benefits in addition to "reduc[ing] bleeding gums," "reduc[ing] inflamed gums," and "remov[ing] plaque."

36.    Thus, even the statement that Parodontax "Helps Reverse Signs of Early Gum Disease" is misleading, as no toothpaste can reverse signs of early gum disease beyond "reduc[ing] bleeding gums," "reduc[ing] inflamed gums," and "remov[ing] plaque."

37.    Combined with the lack of any limiting language, reasonable consumers reading the Parodontax label believe the "ACTIVE GUM REPAIR" products will "repair" their gums and reverse gingivitis or even periodontitis, even as compared to other products sold by Haleon.

---

[27] Parodontax, "Complete Protection Pure Fresh Mint Toothpaste" *available at* https://www.parodontax.com/products/parodontax-toothpaste/complete-protection-toothpaste-pure-fresh-mint/, *last accessed* August 6, 2024; *compare to* Parodontax, "Active Gum Repair Fresh Mint Toothpaste" *available at* https://www.parodontax.com/products/parodontax-toothpaste/active-gum-repair-fresh-mint/, *last accessed* August 6, 2024.

38.     Put differently, reasonable consumers will expect Parodontax will repair structural damage such as gum recession, bone loss, or periodontal pocketing, instead of or in addition to the promise of "Revers[ing] Signs of Early Gum Disease."

## III.   PLAINTIFF'S EXPERIENCES

39.     Plaintiff bought Parodontax on one or more occasions within the statute of limitations for each cause of action alleged, at Walmart in Los Angeles California, via an online order.

40.     Plaintiff purchased the Product in reliance on the representation that it can "repair gums" and "reverse" gingivitis, which led Plaintiff to believe that Parodontax would "repair" his gums.

41.      Plaintiff paid a premium price of $6.98 for a Parodontax product: Parodontax Active Gum Repair Toothpaste. Plaintiff had previously used a cheaper toothpaste for which he paid approximately $2.59, but switched in the hope that Parodontax would repair his damaged gums.

42.     The Parodontax product Plaintiff purchased did not and could not provide the represented gum "repair" and "reverse" gingivitis benefits.

43.     Plaintiff chose between Parodontax and other similar products, but which did not misrepresent their attributes and/or lower-priced products which did not make the gum repair claims made by Defendant.

44.     Had Plaintiff known the truth about Defendant's misrepresentations, he would not have purchased Parodontax, or would not have paid as much for it.

45.     As a result, Plaintiff suffered injury in fact and lost money at the time of purchase. Plaintiff continues to desire to purchase Parodontax products that can support the health of their gums and are not misleadingly labeled, and they would purchase such a product manufactured by Defendant if it were possible to determine prior to purchase the extent of the product's gum benefits.

46.    Each and every consumer who purchases Parodontax is exposed to the deceptive gum repair representation, which appeared prominently and conspicuously on the front of Parodontax packaging during the Class Period.

47.    Haleon's misrepresentations and mislabeling caused Plaintiff and members of the proposed class to pay a price premium for Parodontax because they believed that they were purchasing a specialty product that would bring back, restore, or rebuild lost gums. Had Plaintiff known the truth about Parodontax, he would not have purchased it or, at a minimum, he would have paid less for it.

## CLASS ALLEGATIONS

48.    Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following class:

> All persons in the State of California who, from the beginning of the applicable limitations period through the date of trial, purchased one or more of Defendant's Parodontax "ACTIVE GUM REPAIR" products for personal use and not for resale.

49.    At this time, Plaintiff does not know the exact number of members of the Class; however, given the nature of the claims and the number of retail stores in the United States selling Parodontax, Plaintiff believes that Class members are so numerous that joinder of all members is impracticable. Plaintiff alleges that all acts of the Defendant pertinent to the common course of conduct alleged in this Complaint, including the development and dissemination of the deceptive marketing campaign for Parodontax discussed herein, emanated from Defendant's headquarters in the state of New Jersey.

50.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-Class, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

51.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

a) whether Defendant owed a duty of care to Plaintiff and the Class;

b) whether Defendant knew or should have known that Parodontax is ineffective;

c) whether Defendant wrongfully represented and continues to represent that Parodontax is effective;

d) whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and/or misleading;

e) whether the alleged omissions and misrepresentations are likely to deceive a reasonable consumer;

f) whether Defendant had knowledge that those alleged omissions or misrepresentations were false, deceptive, and/or misleading;

g) whether Defendant continues to disseminate those alleged omissions and misrepresentations despite knowledge that the representations are false, deceptive, and/or misleading;

h) whether Defendant's alleged omissions or misrepresentations and descriptions on Parodontax's labeling are likely to mislead, deceive, confuse, and/or confound consumers acting reasonably;

i) whether Defendant engaged in unfair trade practices;

j) whether Defendant engaged in false advertising;

k) whether Defendant's conduct was negligent per se;

l) whether Plaintiff and the members of the class are entitled to actual, statutory, and/or punitive damages; and

m) whether Plaintiff and members of the class are entitled to declaratory and injunctive relief.

52.    Plaintiff's claims and basis for relief are typical to other class members because all were subjected to the same unfair and deceptive representations and actions.

53.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests which conflict with those of the Class.

54.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

55.    The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate equitable relief with respect to the Class as a whole.

56.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions could be dispositive of the interests of the Class even where certain Class members are not parties to such actions.

## CAUSES OF ACTION
### Violation of Business & Professions Code §§ 17200, *et seq*.
### (California Consumer Protection Statute for the proposed class)

57.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

58.    Plaintiff Joshua Cross brings this claim individually and on behalf of the Class as defined above.

59.    Plaintiff and the proposed class members desired to purchase a toothpaste that could repair gums and "reverse" gingivitis, as indicated on the label.

60.    The Unfair Competition Law, Business & Professions Code §§ 17200, *et seq*. ("UCL"), prohibits any "unlawful," "unfair," or "fraudulent" business act or practice and any false or misleading advertising.

61.    **Unlawful Business Practices**: In the course of conducting business, Defendant committed "unlawful" business practices in violation of the UCL by, inter alia, making the gum repair and "reverse" gingivitis representations, which are false, misleading, and deceptive (which also constitutes advertising within the meaning of § 17200); violating the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*.; California's Sherman Food, Drug and Cosmetic Law, Health & Safety Code §§ 109875 *et seq*.; and the Food Drug and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*.

62.    Plaintiff and the proposed class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

63.    **Unfair Business Practices**: In the course of conducting business, Defendant committed "unfair" business acts and practices by, inter alia, making the gum repair and "reverse" gingivitis representations, which are false, misleading, and deceptive (which also constitutes advertising within the meaning of § 17200). There is no societal benefit from false advertising, only harm. While Plaintiff and the public at large were and continue to be harmed, Defendant has been unjustly enriched by its false, misleading, and deceptive representation as it unfairly enticed Plaintiff and the proposed class members to purchase the Products instead of similar, less expensive toothpaste products sold by other manufacturers. Because the utility of Defendant's conduct (zero) is outweighed by the gravity of harm to Plaintiff, consumers, and the competitive market, Defendant's conduct is "unfair."

64.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. For example, Defendant could have sold the Product without the gum repair representation.

65.    **Fraudulent Business Practices**: In the course of conducting business, Defendant committed "fraudulent business act[s] or practices" and deceptive or misleading advertising by, inter alia, making the gum repair and "reverse" gingivitis representations, which are false, misleading, and deceptive to reasonable consumers.

66.    Defendant's actions, claims, and misleading statements, as more fully set forth above, are misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code §§ 17200, *et seq*.

67.    Plaintiff relied on Defendant's gum repair and "reverse" gingivitis representations and was in fact injured as a result of that false, misleading, and deceptive representation.

68.    As alleged herein, Plaintiff and the proposed class members have suffered injury in fact and lost money or property at the time of purchase as a result of Defendant's conduct because they were exposed to and purchased Defendant's Products in reliance on the gum repair and "reverse" gingivitis representations but did not receive a Product that can repair gums or "reverse" gingivitis.

69.    Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

70.    Plaintiff and the proposed class members seek declaratory relief and an injunction prohibiting Defendant from continuing such practices, corrective advertising, restitution of all money obtained from Plaintiff and the proposed class members collected as a result of unfair competition, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

**COUNT II**
**Violations of the Consumer Legal Remedies Act –**
**Cal. Civ. Code §§ 1750, *et seq*.**
**(California Consumer Protection Statute for the proposed class)**

71.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

72.    Plaintiff brings this cause of action individually and on behalf of the Class as defined above.

73.    Plaintiff brings this claim individually and on behalf of similarly situated California consumers pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq*. (the "CLRA").

74.    Plaintiff is a consumer as defined by California Civil Code § 1761(d).

75.    The Product is a "good" within the meaning of the CLRA.

76.    Defendant violated and continues to violate the CLRA by "[r]epresenting that [the Product has] . . . characteristics, . . . uses [and] benefits . . . which [it does] not have" and "[r]epresenting that [the Product is] of a particular standard, quality, or grade … if [it is] of another" in transactions with Plaintiff and the proposed class members which were intended to result in, and did result in, the sale of the Products. *See* California Civil Code § 1770(a)(5), (7).

77.    Pursuant to California Civil Code § 1782(d), Plaintiff and the proposed class members seek a Court Order declaring Defendant to be in violation of the CLRA, enjoining the above-described wrongful acts and practices of Defendant, and ordering restitution and disgorgement.

78.    Pursuant to § 1782 of the CLRA, Plaintiff notified Defendant in writing by certified mail of the particular violations of § 1770 of the CLRA and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act. A copy of the letter is attached hereto as Exhibit A.

## <u>COUNT III</u>
### Express Warranty

79.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

80.    Plaintiff brings this cause of action individually and on behalf of the Class as defined above.

81.     Plaintiff, and each member of the Class, formed a contract with Defendant at the time Plaintiff and each member of the Class purchased Parodontax.

82.     The terms of the contract include the promises and affirmations of fact made by Defendant on Parodontax's packaging and through marketing and advertising, as described above. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the contract between Plaintiff and the members of the Class and Defendant.

83.     Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased Parodontax. Defendant breached express warranties about Parodontax and its qualities because Defendant's Parodontax's representations purports Parodontax could repair gums and "reverse" gingivitis or even periodontitis, which it cannot.

84.     Plaintiff and each of the members of the Class would not have purchased Parodontax had they known Parodontax did not "repair gums."

85.     Plaintiff and members of the Class relied upon the representations made by Defendant at the time of purchase and were deprived of the benefit of the bargain as a result of Defendant's conduct.

86.     As a result of Defendant's breach of warranty, Plaintiff and each of the members of the Class have been damaged in the amount of the purchase price of Parodontax and any consequential damages resulting from their purchases.

**<u>COUNT IV</u>**
**Breach of Implied Warranty of Merchantability**

87.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

88.     Plaintiff brings this cause of action individually and on behalf of the Class as defined above.

89.     Defendant manufactured, labeled, and sold Parodontax and expressly and impliedly warranted to Plaintiff and Class members that they could repair gums

and "reverse" gingivitis, as indicated on the label. Plaintiff and Class members purchased Parodontax for these reasons and the advertising and marketing stated above.

90.    Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires, such as the many Americans who have dental problems such as gum rescission and are suffering from various stages of gingivitis.

91.    Defendant's Products do not "repair gums" as represented, and, according to available medical literature, cannot repair already-damaged gums.

92.    Defendant was aware of Parodontax' defects at the time it sold them to Plaintiff and Class members. As a result of Defendant's breach of warranties, Class members have suffered damages because they have purchased Products they would not have otherwise purchased and/or paid more for Products than they would have otherwise paid. Plaintiff and Class members are entitled to receive damages from Defendant in an amount to be determined at trial.

**COUNT V**
**Unjust Enrichment**
**(In the Alternative)**

93.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

94.    Plaintiff brings this cause of action individually and on behalf of the Class as defined above.

95.    Plaintiff and Class members conferred benefits on Defendant by purchasing Parodontax.

96.    Defendant has knowledge of such benefits.

97.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class members' purchases of Parodontax. Retention of those monies under these circumstances is unjust and inequitable because Defendant represented that Parodontax could "repair gums."

98.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

Plaintiff, individually, and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in her favor and against Defendant as follows:

A.     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff Joshua Cross as representative of the Class, and Plaintiff's attorneys as Class Counsel to represent the Class members;

B.     For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.     For injunctive relief enjoining the illegal acts detailed herein;

F.     For prejudgment interest on all amounts awarded;

G.     For an order of restitution and all other forms of equitable monetary relief;

H.      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

DATED: October 29, 2024        **KAPLAN FOX & KILSHEIMER LLP**

By: /s/ *Justin B. Farar*
          Justin B. Farar

Justin B. Farar (SBN 211556)
12400 Wilshire Boulevard, Suite 460
Los Angeles, CA 90025
Telephone: 310-614-7260
Facsimile: 310-614-7260
Email: *jfarar@kaplanfox.com*

**KAPLAN FOX & KILSHEIMER LLP**
Laurence D. King (SBN 206423)
Matthew B. George (SBN 239322)
Blair E. Reed (SBN 316791)
Clarissa R. Olivares (SBN 343455)
1999 Harrison Street, Suite 1560
Oakland, CA 94612
Telephone: 415-772-4700
Facsimile: 415-772-4707
Email: *lking@kaplanfox.com*
          *mgeorge@kaplanfox.com*
          *breed@kaplanfox.com*
          *colivares@kaplanfox.com*

*Attorneys for Plaintiff and the Proposed Class*